**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

LEE'S FAMOUS RECIPES, INC.,

    Plaintiff,

v.                                             CASE NO.: 3:07cv24/MCR/EMT

FAM-RES, INC.,

    Defendant.
_____/

**O R D E R**

This law suit arises from the termination of two franchise agreements. Plaintiff has filed suit under federal and state law claiming that the defendant breached the agreements by failing to pay royalties, advertising costs, and other amounts due under the terms of both agreements; infringed on its registered trademark by its unauthorized and unlicensed use of the trademark; and engaged in unfair competition, false designation of origin, and dilution of plaintiff's marks by its use of marks identical to those of the plaintiff. Plaintiff has requested injunctive relief and damages. Defendant has filed a motion to dismiss plaintiff's complaint on the basis of lack of personal jurisdiction. This motion is presently before the court for consideration.

**Facts**

Fam-Res, Inc. ("Fam-Res") is an Indiana corporation which operates restaurants within that state. Lee's Famous Recipes, Inc. ("LFRI") is a Florida corporation and the franchisor of the Lee's Famous Recipe franchise system. LFRI became the franchisor of the Lee's Famous Recipe franchise system in October 2003 pursuant to an asset purchase from the former franchisor, Shoney's Inc.[1]  As part of the asset purchase LFRI was assigned rights under two franchise agreements then-existing between Fam-Res and

---

[1] Shoney's, Inc. is a Tennessee corporation.

Shoney's , Inc.  These agreements had been entered into between Fam-Res and Shoney's Inc. in December 1991 for the operation of Lee's Famous Recipe restaurants by Fam-Res in South Bend, Indiana and Mishawaka, Indiana.[2]  LFRI alleges that Fam-Res has committed numerous breaches of the franchise agreements both before and after their termination in January 2007.

The facts pertinent to the question of whether the court has personal jurisdiction over the defendant Fam-Res show the following.

Fam-Res is an Indiana corporation.  It does not now, and has not in the past, conducted business in Florida.  Fam-Res has no business offices, agents, or restaurants in Florida.  The license agreements that are the subject of this law suit were entered into in December 1991 between Fam-Res and Shoney's Inc., a Tennessee corporation. These agreements were not negotiated in Florida, and both contain a choice of law and forum selection clause designating Tennessee law as the controlling law and the site for any legal action arising under the agreements.

In October 2003 Fam-Res became responsible under the agreements to LFRI as a result of LFRI becoming the new franchisor of Lee's Famous Recipe franchise system.[3] LFRI was headquartered and operated in Florida.  As a result, Fam-Res began remitting all payments for royalties and advertising fees to LFRI in Florida and reporting and certifying all sales to LFRI in Florida.[4]  In April 2005 Fam-Res submitted an "Authorization of Inventory Purchase" for promotional items to LFRI's corporate office in Florida.  As required by the franchise agreements, Fam-Res has included LFRI as an additional insured under its insurance policies and has authorized its insurance agent to issue a Certificate of Liability Insurance to LFRI's corporate office in Florida.   In the Spring of 2004, Fam-Res' president attended an LFRI conference in Florida.  Finally, all of LFRI's communications with Fam-Res' initiated in Florida, and Fam-Res responded back to LFRI

---

[2]  Fam-Res no longer operates the Mishawaka restaurant but still owns the property.

[3]  This resulted from Shoney's Inc.'s assignment of its rights under the agreements to LFRI.

[4]  In April 2006, Fam-Res began participating in online reporting and certifying of sales to LFRI's corporate office in Florida.

in Florida without objection.

**Discussion**

Motion to Dismiss - Lack of Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction when no evidentiary hearing is conducted, the plaintiff must establish a prima facie case of jurisdiction over the nonresident defendant. Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc., 1998 WL 1759759 at *3 (M.D. Fla. 1998) (citing Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990)).  The plaintiff's prima facie case must be sufficient to defeat a motion for a directed verdict. Id.  In determining whether such a prima facie case is established, the court must accept the facts in the complaint as true to the extent they are not controverted by defendant's affidavits. Lauzon v. Joseph Ribkoff, Inc., 77 F.Supp.2d 1250, 1253-1254 (S.D. Fla. 1999); Cable/Home Communication, 902 F.2d at 855. Where the evidence conflicts, the court is required to view all reasonable inferences in plaintiff's favor. Id.  Once the plaintiff pleads sufficient material facts to support the exercise of in personam jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other competent evidence. Lauzon, 77 F.Supp.2d at 1254 (citing Prentice v. Prentice Colour, Inc., 779 F.Supp. 578, 585-586 (M.D. Fla. 1991)). If the defendant sustains his burden, the plaintiff is required to substantiate the allegations in the complaint by affidavits or other competent evidence and not simply reiterate the factual allegations presented in the complaint. Id.  (citing Prentice, 779 F.Supp. at 586; Murphy v. Republic Health Corp., 645 F.Supp.124 (S.D. Fla. 1986)).

The Eleventh Circuit has developed a two-part analysis to determine if personal jurisdiction exists over a nonresident defendant. Precision Software Servs., 1998 WL 1759759 at *4 (citing Cable/Home Communication, 902 F.2d at 856)). First, the court must examine the jurisdictional issue under the state long-arm statute (Florida in this case). Id. Second, the court must determine whether "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice" as set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Id. (citations omitted). The minimum contacts requirement is satisfied if the defendant "purposefully directs activities at Florida

and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state." Achievers Unlimited, Inc.v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th Dist. Ct. App. 1998); see also Burger King v. Rudzewicz, 471 U.S. 462 (1985); Hanson v. Denckla, 357 U.S. 235 (1958). Only if the court determines there is a basis for asserting personal jurisdiction under the long-arm statute does it conduct the due process analysis. Nida Corp. v. Nida, 118 F.Supp.2d 1223, 1228 (M.D. Fla. 2000).

The Florida long-arm statute provides for two distinct categories of personal jurisdiction: specific jurisdiction conferred under § 48.193(1) and general jurisdiction conferred under § 48.193(2). Miller v. Berman, 289 F.Supp.2d 1327, 1331 (M.D. Fla. 2003) (citing Northwestern Aircraft Capital Corp. v. Stewart, 842 So.2d 190, 193 (Fla. 5th DCA 2003) (internal citations omitted)). A court may exercise specific jurisdiction over a nonresident defendant only when the defendant's contacts with the forum state arise from or are directly related to the cause of action. Norwood v. Teather, 2005 WL 723863 at *3 (citing Helicopteros, 466 U.S. at 414). A court may exercise general jurisdiction over a nonresident defendant when the suit does not arise out of the nonresident's activities in the forum state. Helicopteros Nacionales de Colombia S. A. v. Hall, 466 U.S. 408, 414-415 (1984)).

Florida's long-arm statute is to be strictly construed. Sculptchair, Inc. V. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996). Additionally, because the extent of the long-arm statute is governed by Florida law, any construction of the statute by a federal court must rely on prior decisions of the Florida Supreme Court construing the statute. Id. In the event the Florida Supreme Court has not addressed a particular construction of the statute, a federal court is bound by the decisions of the state's intermediate appellate courts, absent some indication the Florida Supreme Court would decide otherwise. Id.

Specific jurisdiction under Florida's long-arm statute is conferred under §48.193(1), which, among other enumerated grounds, allows a Florida court to assert personal jurisdiction over a nonresident defendant where the defendant breached a contract in the state by failing to perform acts required by the contract to be performed in this state. See

Fla. Stat. §48.193(1)(g).[5] Under Florida law, a defendant's failure to pay a contractual debt where payment is due to be made in Florida is sufficient to subject the defendant to jurisdiction under the state's long-arm statute. See Global Satellite Communication Co., v. Sudline, 849 So.2d 466, 468 (Fla. 4th DCA 2003); Hartcourt Companies, Inc.. v. Hogue, 817 So.2d 1067, 1070 (Fla. 5th DCA 2002). Florida courts have consistently recognized that in the absence of a designated site for payment in the contract the law presumes the place for payment to be the creditor's state of residence. Global, 849 So.2d at 468; Buto v. Sirius International Insurance Co., 807 So.2d 674 (Fla. 3d DCA 2001); Harris v. Caribank, 536 So.2d 394 (Fla. 4th DCA 1989); First National Bank of Kissimmee v. Dunham, 342 So.2d 1021 (Fla. 4th DCA 1977).

Plaintiff's complaint alleges, among other things, that defendant has failed to make various payments under the express terms of its franchise agreements with plaintiff. There is no indication that either franchise agreement specified a place for payment; thus, the court will presume that payment was to be made in Florida at plaintiff's place of business. These facts are sufficient to confer personal jurisdiction over defendant in Florida under §48.193(1)(g). See Global Satellite Communication Co., 849 So.2d at 468.

Having determined that jurisdiction over the defendant exits under Florida's long-arm statute, the court must now consider whether the defendant has sufficient "minimum contacts" with Florida such that this court's exercise of personal jurisdiction over it would not offend due process. See International Shoe Co., v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Notwithstanding a literal application of the long-arm statute to the defendant in this case, personal jurisdiction may not be asserted unless the facts show that through its conduct and connection with the state the defendant should have reasonably anticipated being hauled into court here. See World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). When assessing a defendant's conduct and connection with the forum state to determine whether the defendant has sufficient minimum contacts to justify the exercise of personal jurisdiction over the defendant the court should consider the following criteria: "First, the

---

[5] Defendant's argument for specific jurisdiction is based on §48.193(1)(g). Defendant does not assert a basis for general jurisdiction over plaintiff under §48.193(2).

contacts must be related to the plaintiff's cause of action or have given rise to it.  Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws.  Finally, the defendant's contacts within the forum state must be such that she should reasonably anticipate being hauled into court there."  Sculptchair, 94 F.3d at 631.

It is well-settled under Florida law that the minimum contacts requirement of the due process clause is not satisfied by merely showing that an out-of-state party entered into a contract with a Florida party, even where the out-of-state party allegedly breached the contract by failing to make payment in Florida under the express terms of the contract. Hartcourt, 817 So.2d 1067, 1070 (Fla. 5th DCA 2002); Christus St. Joseph's Health Systems v. Witt Biomedical Corporation, 805 So.2d 1050, 1053-54 (Fla. 5th DCA 2002); Pres-Kap, Inc. v. System One, Direct Access, Inc., 636 So.2d 1351, 1353 (Fla. 3d DCA 1994); Pacific Telephone and Telegraph Company v. Geist, 505 So.2d 1388, 1390 (Fla. 5th DCA 1987); Rexam Airspray, Inc. v. Arminak, 471 So.2d 1292, 1302 (S.D. Fla. 2007). Accordingly, the fact that Fam-Res was a party to a contract with LFRI, a Florida-based company, requiring payment to be made in Florida, is insufficient to satisfy the minimum contacts required by the due process clause.

The question thus becomes whether Fam-Res' other contacts with Florida are sufficient to warrant the exercise of personal jurisdiction over it by this court.  The court finds they are not because Fam-Res has done nothing on its own to purposefully direct its activities at Florida, which has resulted in litigation or to purposefully avail itself of the privilege of conducting activities in Florida, and therefore, the court cannot conclude that Fam-Res should reasonably have anticipated being sued here.  To the contrary, Fam-Res' only contacts with Florida stem from its contractual relationship with LFRI, a relationship brought about solely by the unilateral action of Shoney's Inc. assigning its rights under the franchise agreements to LFRI.  Fam-Res was not involved in any way in this transaction and received no benefit from it.  Moreover, the franchise agreements which are the subject of this action were originally negotiated and entered into between Fam-Res' and Shoney's

Inc. in Tennessee, and specified Tennessee as the forum for any resulting litigation.[6]  From these facts it is obvious that Fam-Res was hauled into Florida by LFRI rather than by its own purposefully directed activities or its own purposeful availment of the state's privileges and protections.  LFRI's unilateral action of entering into a transaction with a party with whom Fam-Res had a prior contractual relationship cannot serve as a substitute for what otherwise must be sufficient contact by Fam-Res with Florida.  See Pacific Telephone and Telegraph Company, 505 So.2d at 1390 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958)).

LFRI suggests that because Fam-Res sent payments and sales reports to LFRI's corporate office in Florida without objection, made one inventory purchase from LFRI in Florida, included Fam-Res as an additional insured on its insurance policies, and its president attended a franchise conference in Florida Fam-Res could reasonably anticipate being hauled into court in Florida.  The court disagrees.  These contacts are random and fortuitous and make it nothing more than merely foreseeable that Fam-Res may be sued in Florida by LFRI. The mere foreseeability of an injury in Florida however is not enough to satisfy the due process clause.  See Volkswagon, 444 U.S. at 295, 100 S.Ct. at 566. Fam-Res has not made any purposeful contact with Florida.  For all Fam-Res could control, Shoney's, Inc. could have assigned its rights under the franchise agreements to a business in a state other than Florida.  See Pacific Telephone and Telegraph Company, 505 So.2d at 1391.

Accordingly, Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction (doc.  6) is GRANTED and Plaintiff's complaint is DISMISSED.

**ORDERED** on this 15th day of May 2007.

 s/ *M. Casey Rodgers*
**M. CASEY RODGERS
UNITED STATES DISTRICT JUDGE**

---

[6]  Thus, the only transaction showing purposeful availment on Fam-Res' part was a Tennessee-based transaction not a Florida-based one.